on behalf of the Appalachians, Warren Jackson, Mr. Haricourt, on behalf of the Appalachians, Ms. Carolyn Quack. Thank you. Mr. Durkin, you may proceed. Thank you, Your Honor. May it please the Court. Good morning, Your Honors. I represent the appellant, Warren Jackson, who filed a petition for formal proof of will in the trial court, seeking to, at the time, undo the admission and the will of Richard Libby to probate. We are seeking the reversal of the trial court's August 23, 2018 order affirming that admission. It is our contention that the executor failed to meet her burden at the trial court to present to the trial court two attesting witnesses. 755 ILCS 5-6-4B provides the executor with three ways to present that evidence to the trial court. It can be either an attestation clause, an affidavit, or live testimony. This case doesn't involve an affidavit. It involves only the attestation clause and the testimony. It is an either-or proposition for the executor, and it is a case where I must show that both of them failed. I'm sorry. You said it's an either-or? Yes. Why isn't it an and-or? Why couldn't the trial consist of an attestation clause, an affidavit from one of the witnesses, and then one of the other witnesses testify? For purposes of admitting the will to probate, all the trial court would have to find is that the attestation clause is valid on its face. It doesn't have to. For purposes of admitting, the evidence can be all of the three. But for purposes of admitting, it must be either the attestation clause on one hand or an affidavit and testimony and or testimony on the other hand. So I agree with the Court that in practice, all three or two of the three will be presented to the trial court. But for the trial court to sustain the admission, it must be either the clause or witnesses. But for my purposes, I have to show you again here today that the clause fails and the evidence fails. That's my burden for me today. For purposes of your review, the trial court's finding that the clause was acceptable is de novo. My challenge to the trial court's finding that the testimony was sufficient would be against the manifest weight of the evidence. So first we'd look at the clause and see if it satisfies 4A, which provides for the substance of an attestation clause. 4A, 5-6, 5-6-4A, provides that each of the two attesting witnesses must do three things. They must see the testator sign the will. The testator must see the testator sign the will. And the witness must believe that the testator is of sound mind and memory. Those are the three things that if the two witnesses do those things on the piece of paper, as I was saying to you, I believe the case would be over. In this case, we argue here, as we did to the trial court, that the attestation clause did not state that the witnesses. Could I go back and clarify what appears to be a premise that's presumed, and that is when you said the case is over, it means that you lose? Correct. That there will be an order entered, that the will would be admitted. We argue to the trial court, we argue here, that the attestation clause does not state or does not state something that is reasonably equivalent to that the person believed the testator to be of sound mind and memory. We also argue here, and we did not argue below, and the executor is right to point out that the argument is waived as to whether or not the clause says the witnesses saw the signing. But we present that to you in two facets. One, it's still, the law allows you, if you feel compelled, in the interest of justice, to fine in our favor. But I think it also shows the degree to which the attestation clause fails on its face. But as for belief, we argue in our briefs that belief means something different to the best of one's knowledge. To the best of one's knowledge does not evidence any commitment on the part of a person making the statement, whereas belief does. And to that we cited, there's no case law that directly addresses the difference of the two terms, which is why we relied on the dictionary, which is consistent with interpreting the plain and ordinary meaning of terms in documents in Illinois, where belief is to accept something as true, genuine, or real. Counsel, doesn't the Boner case essentially, the Illinois Supreme Court hold that to the best of one's knowledge is the equivalent of belief? The provisions in Boner, the debate in Boner was between the phrase, to the best of his knowledge and belief, is that equivalent to information belief? And so what made Boner inapplicable to the present case is belief was in both provisions of the issue in Boner. So both clauses had the phrase belief in it. So to the best of one's knowledge doesn't require you to take a position one way or the other. Does that not then make the first phrase relating to knowledge superfluous and surplusage and you basically aren't giving it any credence? No, I don't think that it does. To the extent that information belief would also be surplusage. I think that these are, knowledge and belief, information and belief, it is a phrase, it is a term of art, if you will. To the extent that everyone uses information and belief, I don't know that anybody, I think what it says is I have information to form the belief. I have knowledge to form the belief. But it's that extra step where it says I have. So is this based upon a preponderance, by clear and convincing or beyond a reasonable doubt, this belief that we're supposed to be adjudicating or measuring? Well, the first thing I would say to you is for purposes of the attestation clause, it has to say belief. It's not a preponderance. It's simply does the person say. My point is that when they make the declaration, is it possible to impeach an attestation clause by determining or making inquiries through essentially cross-examination or examination of a possible hostile witness, that their belief isn't as strong as a different affiant's belief because their belief is based upon probable cause or mere suspicion or preponderance of the evidence? In other words, is there any case law or statutory language that indicates what the level of the quantum that is required of relating to evidence that determines when a belief becomes sustainable insofar as an attestation clause is concerned? I will answer it two-fold directly. No, to the answer to your question, is there any case law. And two, I don't think there is any examination, evidentiary examination. The attestation clause rises and falls on its face. If it uses the right verbiage, there isn't. That is the entire point because the witnesses can be dead. They cannot remember. The attestation clause is to say at the time. It's a very minimal requirement, and perhaps one can say it's not sufficient. It doesn't seem like it gets to the heart of it. It doesn't present any foundation, which is, I think, the court's question, which I think matters more in the evidentiary hearing. But the attestation clause is just a very simple declaration. I saw him sign it. He saw me sign it. And I believe that this person was assigned 9-1-1. It doesn't require. You can't have a later hearing that says I just want to challenge the foundation of the word belief. There's no case law that does that, and I don't believe any case law would allow you to do that. If that's the case, then if someone were to testify that they believe the person was of sound mind and memory, then does that then mean it's an irrebuttable presumption, and the opposing counsel or the opposing party could not even cross-examine, attempt to impeach that aspect of the testimony? I believe so, yes. I think that is the power of the attestation clause. That is why you could argue that it's a very low burden to cross where you have no remedy. But, yes, that is the power of the attestation clause. It recognizes that witnesses can die, witnesses can be gone, witnesses can forget. If somebody were to say, what's your basis for the belief that he was of sound mind and memory? The cases are like this. I don't remember. Well, now there's no foundation. And does that undo it? And the simple answer to that is no, because we're not. It's because past recollection recorded, maybe? Perhaps. But, again, there's no foundation. To the Court's question, it's lacking foundation in the attestation clause. That's still sufficient. Well, isn't the foundation, in effect, the clause itself? I was there. I watched him sign it. He watched me sign it. That's the foundation for the admission of this document. If you really want to stretch this out into one evidentiary question. Isn't the point here that it either rises and falls on the 15 words in the attestation clause? Is that the point here? If you're looking at the attestation clause, if the attestation clause does those three things, yes. If it doesn't do those three things, then you get into evidentiary questions of what would be sufficient to establish belief. Is there a foundation for the person's belief? Those are different questions. But that's if the attestation clause failed. I believe it does because I don't think, to the best of our knowledge, is the same as belief. And so once you get past that, once you say, look, we don't owe any deference to the document anymore, you're now in an evidentiary question. And in some sense, from the executor's point of view, we were talking about sort of the lightness of proof necessary for the attestation clause as a benefit to an executor. They don't have to establish foundation. But if the clause is done improperly, now those lost witnesses, now those dead witnesses do become a problem for the executor. So it's easy on the one hand, the attestation clause, and it becomes more challenging on the other if you don't do the attestation clause or you don't have an attestation clause. But fundamentally, it's not that difficult. But when it's done wrong, I would suggest to you, and that's why we raised the argument that the clause doesn't say they saw him cited either, understanding that it's waived, something, this clause fails. It doesn't do two things it's supposed to do. So now, if you get to the testimony, we have the trial court to which we owe deference, making two findings. I don't necessarily agree that the witness, Hanson, satisfies the statutory requirements, but the judge found them. But the judge also found that the witness, Costa, did not. So once you get to the hearing and you're two witnesses, they don't both succeed. And that's why we do the attestation clause first if it rises or falls. In this case, I believe it falls because of the two reasons I've stated. You then get to the testimony, and then it fails because you don't have two witnesses. Now, there's three cases of import that the executor cites in connection with witnesses providing sufficient testimony to affirm admission into probate. One of them is Meade, one of them is Loomis, and one of them is Knappers. Meade is a case that I don't think in practice anyone would do today. It doesn't recite the statute. It used the evidence of sound mind and memory from other witnesses, not from the will witnesses. And that is not how we do a proof of will today. We don't prove up sound mind and memory from other witnesses in lieu of the attesting witnesses. That's the job of the attesting witnesses. Loomis is an exceptional case. Loomis is a case where there were two witnesses, one witness who was impeccable at the hearing, and the second witness who turned out to be an interested witness who said, no, no, I signed a blank sheet of paper, because it turns out that witness, had the will gone to probate, would receive less than if the will was denied admission to probate. And so the Loomis court ostensibly said, no, we're not going to let that person perpetrate a fraud on the court. We're going to look past that one improper witness, for the reasons I've stated, and sustain the will to probate, recognizing that the Illinois legislature has since changed the statute to require two disinterested witnesses so that the Loomis circumstance never happens again. The third case is the Knappers case, and I submit to you then that the Knappers case is the closest to the present case. In Knappers, the argument made by the person challenging admission is similar to the argument I'm making to you here today, that you need both witnesses to testify for the statutory factors. One of the witnesses in Knappers was white. The witness Hanson was, in this case, for the trial court, where that witness satisfied all the statutory factors. The other witness in Knappers could not satisfy all of the statutory factors, but was able to establish that the person was of sound mind, which is ostensibly one of the three statutory factors. The Knappers court said that was sufficient. In our case, Costa was unable to satisfy any of the statutory requirements. She was not able, per the trial court, to say the witness was of sound mind. She was not able to say that the witness signed the will. So in Knappers, you had a perfect witness, if you will, and a modestly okay witness. And the appellate court said that's sufficient. Here, we have one perfect witness per the trial court, Ms. Hanson. We have a completely imperfect witness, Ms. Costa. And for that reason, the testimony was insufficient. And coupling that with the infirm attestation clause requires reversal and denial of the will to probate. Thank you. Thank you. You'll have an opportunity to make a rebuttal. Thank you, Your Honor. Ms. Quack, or is it Mrs.? Ms. Ms. Thank you, Your Honor. You may proceed. Good morning, Your Honors, and may it please the Court. I represent the appellee, Julie Zamudio, as independent executor of the estate of her late father, Richard P. Libby. Mr. Libby's will was properly admitted to probate for the following two reasons. One, the attestation clause in Mr. Libby's will on its face is sufficient in accordance with the terms under Section 64A of the Probate Act. And second, even if there were deficiencies or, for argument's sake, there was no attestation clause in Mr. Libby's will, the evidence that was presented at the hearing for formal proof of will more than sufficiently suffice to admit Mr. Libby's will to probate. Your Honors, I want to take a step to address some of the points made in counsel's argument. With regard to the requirements under Section 64A, the Illinois courts have stated that there is a three-pronged approach to how wills are admitted to probate in the state of Illinois. The first would be a very informal proceeding. If there is an attestation clause in a will that is in due form, an attorney or whoever it might be goes to the probate court. You don't have to notify anybody, and you ask the court to admit the will to probate because there's an attestation clause in due form. Within a certain number of days, people get notified, and interested parties can ask for a formal proof of will. The court automatically has to set a hearing if it is requested for a formal proof of will. That is what happened in this case. Under Section 621 of the Probate Act, where there is a formal proof of will hearing, it is not only the attestation clause that can be entered as evidence. In fact, it cannot be only the attestation clause that is entered as evidence in order to get the will admitted to probate. For example, if there is an attestation clause that is in due form, at the very minimum, there has to be a showing that the signatures on the will are genuine. So there is an additional amount of proof that's required if there's a formal proof of will. In addition, Section 621 also allows other confident, sufficient evidence. You're saying that it doesn't necessarily require people to have photographic memories, but they do have to be able to at least certify that it's their signature if they're still alive? Not necessarily, Your Honor. In most cases, yes. But there may be two attesting witnesses, and there is case law spanning over the course of 150 years where two attesting witnesses say, I don't know, that looks like my signature, but I don't remember being there. I'm not sure. That could be my signature. Maybe it is. Maybe it's not. In those cases, there have been other witnesses that have been brought in. Or maybe it's not about the signature, but in a lot of cases, it's about the sound mind and memory requirement under 64A. And other witnesses, including medical professionals, in some cases I've seen 12 other witnesses in addition to the attesting witnesses. And even though the two attesting witnesses could not and would not positively state the provision or the requirements under 64A, the other 12 witnesses, the testimony that they provided, made sufficient evidence, and the will was admitted. Counsel also doesn't address the legislative intent of the Probate Act. And when the court is construing a statute, that is paramount. We need to look at the legislative intent of the act. And there's no need to try to ascertain what that might be. The Probate Act states exactly what that intent is. And that is to expeditiously have proceedings so that wills can be, so that the administration of the estate of the decedent can be expeditiously administered to. That doesn't take away from, and that is why there is a mandatory, it's a mandate to liberally construe the terms of the Probate Act so that that can happen. That doesn't take away from the ability of interested parties to come and say, hey, look, we're going to contest the validity of the will, and that happens when there's a will contest. That is not what happens at the stage where the will is admitted to probate. The requirement that there be a liberal construction and why case after case, over the span of 150 years, from 1866 through the present, state that there is no formal requirement that you use the exact language, believe or certify or swear in some of the cases where in this Illinois Supreme Court. Is there a difference between I have a belief, I believe you to be of sound mind, that's why you're here arguing this morning, and but I have information or a basis for that belief. Aren't those really two different things? It would depend on what context you are in. This context, it rises and falls on the four corners. Absolutely. How can I have, if I just have information without a conclusion or something I draw from that information, isn't that insufficient? Your Honor, under 64A, you are only required to show a belief. You're not required to show that you have. Which you didn't do. You said the best of my knowledge. Exactly, Your Honor. But to having knowledge and the Supreme Court, as Justice Bridges had mentioned. That was really a different fact pattern, wasn't it? It wasn't, Your Honor, because the Probate Act expressly incorporates the provisions of the Code of Civil Procedure into the Act. And in the Boner case, the court was looking at the terms of verifications for pleadings under the Code of Civil Procedure and stated, as counsel pointed out, the phrase at issue was to the best of one's knowledge and belief. But the court stated that the and belief portion in that term was surplusage. And that the knowledge, saying to the best of one's knowledge because the belief portion was surplusage, is made with stronger conviction and affirmation than on information and belief. And I think that that's the common knowledge that we do have as attorneys. If you say, I know something, that is stated with more conviction than saying, I believe. Belief is a very subjective term. And the courts of Illinois, when talking about belief for your belief of sound mind and memory of a testator under the. . . I appreciate what you're saying there. But you just used the example when I say, I know. Not to the best of my knowledge, but I know. Isn't that a difference? To the best of. . . if you were to say, to the best of my knowledge or to the best of my belief. . . I don't think. . . that's not the question. You just said, if I say, I know, that's better than belief. But this attestation clause did not say, I know. It said, to the best of my knowledge. Your Honor. Isn't that a lesser standard? In this case, it does not matter. Why? Because the courts have stated, you don't even have to say anything about sound mind and memory in your testimony at all. Somebody could. . . Are you talking about testimony or are you talking about the clause? The quantum of proof, whether it's through the attestation clause or an affidavit or through the testimony of witnesses, does not change. The quantum of proof is always the same. And case law supports that and it's expressly stated that the quantum does not change. The only thing that changes is the method of how that proof is going to be made. So if you have an attestation clause that's in due form, the method of how you're going to prove the elements under or the requirements under 64A become a little bit easier. And that is, again, to go to the legislative intent of trying to expeditiously administer an estate. You still have to establish that the person who signed it was of sound mind. Absolutely. And so going to where courts have looked at the testimony of attesting witnesses, the court, there is no requirement that you say, I believe or I know or anything regarding sound mind and memory. In Illinois Supreme Court cases, case after case where they are talking about the testimony of witnesses with regard to their belief of sound mind and memory, it was sufficient for an attesting witness to state, well, I didn't see anything, you know, different about him than anybody else. That was sufficient. And there have been cases where the direct question of do you believe, did you believe him to be of sound mind and memory at the time that the will was attested to? And the attesting witness stated no. And the court came back and said, well, look, I understand that you stated no to that direct question, but in the rest of your testimony, the legal effect of stating that somebody is of sound mind and memory to meet the very low burden under 64A was met. So even where an attesting witness has affirmatively stated no, I didn't believe or how would I know is the question that the court has addressed many times. Counsel, you said there are a myriad of cases going back eons. And my question is, other than the Boner case, is there any other authority that you can tell us about that would hold that, to the best of my knowledge, is the equivalent of believe, certify, or swear, as the case law seems to address? Your Honor, there isn't an exact case on the language. But if Your Honor would look at the breadth of cases with regard to the exact requirement of what is required to show an attesting witness's belief of sound mind and memory, the quantum of proof required is very low. They do not have to state anything, as I stated, with regard to the mind or memory of the testator at the time. Again, it is a very low burden that has to be met. Essentially, the Supreme Court has stated that it equates to sanity. Did the person seem sane to you? Yes? Okay. You've met that burden. And Your Honor, I'll bring in my own personal experience. I have acted as an attesting witness. Is that in the record also? No, Judge, it is not. But in terms of if we were to require attesting witnesses to know or have some sort of information to form a belief as to sound mind and memory, the Supreme Court has stated on multiple occasions that very few wills would be admitted to probate if we were to require that. There's no requirement that you know the witness or the testator before you act as an attesting witness. In many of the cases, they've met them that day or that minute, and that's what happened in this case. The attesting witness, Costa, stated she was grabbed as she was, you know, running by Ms. Zamudio's office at her workplace to act as an attesting witness for Mr. Libby's will, and that's what happens many of the times. The only way for the attesting witness to have any information with regard to the sound mind and memory of the testator is oftentimes what you see. And the court has stated that that is sufficient, stating that there was nothing out of the ordinary, there was no indication to the attesting witness that he wasn't of sound mind and memory. That was sufficient to meet the burden under 64A. Your Honors, even if the court concludes that the attestation clause had deficiencies, the will was still properly admitted. As I stated earlier, under Section 621 of the Probate Act, where there is a formal proof of hearing, other evidence can be brought in. So you can look at the attestation clause as a whole, the testimony of the witnesses, and any other evidence that's presented. In this case, both of the attesting witnesses, despite what counsel states, met all three of those requirements. Ms. Costa, it's not a situation where she doesn't recall the events of that day. She recalls specifics of that day. She recalls the date that this happened. She recalls that Ms. Zamudio grabbed her in the morning to act as a witness for her father's will. She states she remembers that Mr. Libby wore a Cubs hat and that he was taller, that she tried to have a conversation with him, and Ms. Zamudio stated that maybe he was hard of hearing or deaf. She remembers many of the facts of that date. She does not deny that her signature is on the will. Your Honors, I see that my time is up. May I briefly conclude? You may finish. Your Honors, the testimony of both of the witnesses meets the low burden under 64A and Section 621 to have the will admitted to probate. Because the attestation clause on its face is sufficiently meets the requirements and the testimony of the two witnesses as well as Ms. Zamudio when taken as a whole also meets the requirements for admitting the will to probate. We ask that you affirm the entry of the order in the trial court. I have one last question for you. You seem to suggest that when this formal hearing takes place, the court should consider all three methods of proof equally, the clause, an affidavit, and testimony. Is that what you're saying? No, Your Honor. The clause rises and falls on its own, and if it fails, then you go to extrinsic evidence? No, Your Honor. Well, which is it? When there is a formal proof-of-will hearing, the court has stated that you look at all of the evidence. In some cases, there is no attestation clause in a will that doesn't make it. Right. But in this case, there is. So do you look at the clause first and determine whether or not it's sufficient and then move on to evidence, or does the court consider all three? You consider all three. At the same time. Yes. Thank you. Thank you. Mr. Dworkin, you may proceed. Thank you. I'll work in reverse order. So the parties in Justice Jorgensen are on the same page. I would describe the process as follows. The clause is presented to the court. The evidence is presented to the court. There is a single hearing where that takes place. Then it's up to the trial court to do its assessment. Whether the trial court does it in any particular order, that's up to the trial court. But as a matter of logic, I think if the attestation clause survives on its face, there is no need to consider the evidence. Because the evidence, unless there's fraud, forgery, which this is not a case of, you don't undo the attestation clause. And I apologize to Justice Jorgensen, I believe it was you earlier, who mentioned that Boner was in a different context. And I want to briefly discuss that context as it applies to the best of my knowledge. The phrase in Boner was used for a different purpose and has a different legal effect. In Boner, the question was whether the verification was sufficient to sustain the pleading at issue. What happens in Boner, to the best of my knowledge, does not take the fact off the table. Are you saying that you're referencing the phrase, or are you saying that to the best of your knowledge, you're not sure? What I'm saying, the purpose of the phrase, to the best of my knowledge, when doing a verification, is different in effect because it doesn't take that fact out of proof. Here, when someone says, I believe this to be true in an attestation clause, back to the process, it cannot be undermined any further. So to the best of my knowledge simply means I have no information from which I can conclude it's false. So I believe it to be true, I don't know anything, the court says don't look at belief, I don't have any information that it's false. That's not the same thing as a belief. And that's what's different between the I believe or we believe in an attestation clause. Counsel seems to indicate you don't need belief. You have to have belief. You have certify, which is stronger. It says I'm stating this with certainty. I'm swearing to it. That's all stronger than I believe it. Where does opinion fit in there? It's my opinion. I suppose. I think it is my opinion. I think there's a whole class of phrases that fall, I would say, short. Is it one based upon faith or is it based upon grace? I think I would say this to you, Your Honor, that in a case where those words were presented, I think I'd have to go look and see how Illinois courts and the law and the dictionary, if they've equated opinion to belief in any way, shape, or form. But in this case, we know that belief is not equated to the best of our knowledge. The other point I would like to make is the expeditious nature of entering wills into probate. It should be expeditious. It can be expeditious if the very simple requirements of the attestation statute are met. The proof of will hearing is not an elaborate production. If someone challenges the will based on the attestation clause, it's a very brief hearing. That's all we had here. This was a one-afternoon hearing. The ruling came later after briefing. It is an expeditious process. The authenticity of the signatures to answer the question asked by opposing counsel is determined by the notary on the document. Presumably, unless there's fraud or forgery, we don't get to the lack of genuineness. And I would simply point out the trial court's observation that it would have been very helpful given the facts and circumstances of this case if these witnesses had the notary been called to testify. With that, Your Honors, I will stop and say that we again ask you to reverse the trial court's order. Thank you. Thank you. We'll take the case under advisement. There are other cases on the call. There will be a short recess.